KIRK G. GIBBS - #5955
kggibbs@kippandchristian.com
JONATHAN M. BURT (16794)
jburt@kippandchristian.com
KIPP AND CHRISTIAN, P.C.
*Attorneys for Associated Industries Insurance*
*Company, Inc.*
10 Exchange Place, Fourth Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-3773
Facsimile: (801) 359-9004

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RIDGEWYCK VENTURES, LLC, dba RIDGEWYCK APARTMENTS; PROPERTY ASSET MANAGEMENT, INC.; and TRAVIS SYKES, an individual, <br><br> Defendants, | **MOTION FOR SUMMARY JUDGMENT** <br><br> Civil No. 2:18-cv-00138-RJS-PMW <br><br> Honorable Robert J. Shelby <br><br> Magistrate Judge Paul M. Warner |

Plaintiff Associated Industries Insurance Co., Inc. ("Associated") moves

under DUCivR 7-1 and 56-1 and rule 56 of the Federal Rules of Civil Procedure for

summary judgment on its action for declaratory relief.

## INTRODUCTION AND RELIEF SOUGHT

Associated seeks declaratory judgment that third-party claims asserted in an underlying civil suit against Defendants are not covered under a liability insurance policy Associated issued to Capital Growth Corporation, d.b.a. Property Management Assets, LLC, under which defendant Ridgewyck Ventures, LLC, d.b.a. Ridgewyck Apartments is also an insured. The grounds for this relief are that the policy at issue unambiguously excludes coverage for the third-party claims. There is no genuine dispute as to any material fact and Associated is entitled to judgment as a matter of law pursuant to rule 56 of the Federal Rules of Civil Procedure.

## UNDISPUTED FACTS

**Underlying Suit**

1.    After an alleged gun fight on Nov. 16, 2016, Travis Sykes filed a lawsuit against his apartment, Ridgewyck Ventures, LLC ("Ridgewyck"), and its property management company, Property Asset Management, Inc ("PAM, Inc.") (the "Underlying Suit"). (Associated Am. Compl., Ex. 1, ECF No. 21-1; Gee Dep. 26:5–8, attached as Ex. 1.)

2.    Ridgewyck is located at 6114 Ridgewyck Drive, Memphis, Tennessee

2

38115. (Associated Am. Compl., Ex. 1, ECF No. 21-1, ¶ 2.)

3.      In his lawsuit, Mr. Sykes alleged that while a tenant of Ridgewyck, three masked individuals entered his apartment brandishing firearms. Mr. Sykes and the intruders exchanged gunfire, and Mr. Sykes was shot four times. (*Id.*, ECF No. 21-1, ¶ 6.)

4.      Mr. Sykes seeks damages on grounds criminal activity was negligently permitted at the apartment complex and for the defendants' failure to provide adequate security at the apartment complex. (*Id.*, ECF No. 21-1, ¶¶ 13–28, 30.)

**The Associated Policy**

5.      Associated issued policy number AES1035289 01 (the "Policy") to Capital Growth Corporation, d.b.a., Property Management Assets, LLC[1] ("Capital Growth"), covering the time period from July 1, 2016 to July 1, 2017. (Associated Am. Compl., Ex. 2, ECF No. 21-2, p. 6.) Capital Growth had previously been covered by a policy issued by Associated. (*See* Gee Dep. 40:13–16 (noting there was a policy in effect from July 2015 to July 2016 and the Policy from July 2016 to July 2017 was a renewal of coverage), attached as Ex. 1.)

---

[1] Not to be confused with PAM, Inc. One is an incorporated entity and the other is an LLC.

6.    Ridgewyck is listed as an additional named insured under the Policy; PAM, Inc. is not. (Associated Am. Compl., Ex. 2, ECF No. 21-2, p. 70; *see also* Poulton Dep. 34:10–17, attached as Ex. 2.)

7.    The Policy's insuring agreement provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages for "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Associated Am. Compl., Ex. 2, ECF No. 21-2, pp. 22–23.)

<u>Assault & Battery Exclusion</u>

8.    The Policy contains an assault-and-battery exclusion, number NX GL 045 08 09 (the "A&B Exclusion)". That exclusion reads:

> This insurance does not apply to:
>
> **Assault and Battery**
>
> "Bodily injury," "property damage," or "personal and advertising injury" arising out of any assault, battery, fight, altercation, misconduct or similar incident or act of violence, whether caused by or at the instigation of, or at the direction of the insured, his/her employees, customers, patrons, guests or any cause whatsoever, including, but not limited to claims of negligent or improper hiring practices, negligent, improper or non-existent supervision of employees, patrons, or guests and

4

negligence in failing to protect customers, patrons or guests.

(*Id.*, ECF No. 21-2, p. 96; *see also id.*, ECF No. 21-2, p. 96.)

9.    The A&B Exclusion applies only to the Ridgewyck Apartments. The exclusion was added by endorsement because of statistically high crime rates in the area. (*Id.*, ECF No. 21-2, p. 122; Poulton Dep. 38:8–19 & Dep. Ex. 4, attached as Ex. 2.)

Firearms Exclusion

10.    All locations, including the Ridgewyck location, are subject to an exclusion for firearms, number NX GL 072 08 09 (the "Firearms Exclusion"). That exclusion reads:

> This insurance does not apply to:
>
> **Firearms**
>
> Any claim or "suit" for "bodily injury," "property damage," "personal and advertising injury" or medical payments arising from the use of firearms.

(*Id.*, ECF No. 21-2, p. 104.)

Assault & Battery Hazard Sublimit

11.    Other locations covered by the Policy are subject to reduced liability limits for assault and battery, endorsement number NX GL 119 08 09 (the "A&B Sublimits Endorsement"). The aggregate liability limit under the Policy is $2

5

million, with a $1 million per occurrence limit. (Associated Am. Compl. Ex. 2, ECF No. 21-2, p. 10.) The A&B Sublimits endorsement reduces the aggregate limit for claims arising from an "assault &battery hazard injury" to $100,000, with a $50,000 per occurrence limit. (*Id.*, ECF No. 21-2, pp. 114–15.)

**Notice of Policy Exclusions**

12.    Ridgewyck and PAM, Inc. assert as their fourth affirmative defense that "Associated may not enforce exclusions since the [P]olicy and exclusions were not provided to [them] prior to loss." (Answer to Amended Complaint, ECF No. 26, p. 7.)

13.    Gerry Gee is the Senior Property Manager for both Capital Growth and PAM, Inc. Both Capital Growth and PAM, Inc. are headquartered in Salt Lake City, Utah and share the same office in Salt Lake City. (Gee Dep. 8:1-5, 9:3-13, 33:7-24, attached as Ex. 1.)

14.    Capital Growth and PAM, Inc. are separate entities. They are property managers for the properties insured by the Policy, and as such, procure liability insurance for those properties. Gerry Gee communicates with insurance agents to procure insurance for the properties insured by the Policy, including Ridgewyck. (Gee Dep. 26:5-17, 27:1-21, 32:3-25, 33:1-17, 36:1-16, 37:6-11, attached as Ex. 1.)

15.    Poulton Insurance, Inc. ("Poulton Insurance") acted as an insurance

agent for Capital Growth in procuring the Policy. (Poulton Dep. 21:25, 22:1–9, 81:2–5, attached as Ex. 2; Gee Dep. 16:2–22, 21: 17-21, 22:3-5, attached as Ex. 1.)

16.    Most communication relating to procurement of insurance (about 99.9%) between Capital Growth and Poulton Insurance was handled by Garry Gee and Michael Poulton, an insurance agent and president of Poulton Insurance. (Gee Dep. 8:5, 16:4, attached as Ex. 1; Poulton Dep. 11:22–24, 25:24–26:13, attached as Ex. 2.)

17.    Poulton Insurance was authorized to communicate on behalf of Capital Growth and PAM, Inc. with insurance brokers and insurance markets to bind coverage. (Gee Dep. 41:14-22, attached as Ex. 1; Poulton Dep.  27:3–17, attached as Ex. 2.) Gee, as Senior Property Manager of Capital Growth and PAM, did not communicate with insurance companies regarding the procurement of insurance. (Gee Dep. 66:2-7, attached as Ex. 1.)

18.    On June 30, 2016, Michael Poulton received an email from insurance broker RT Specialty, LLC ("RT Specialty"), which provided an "updated quote" for Capital Growth's coverage. (Poulton Dep. 69:1–4 & Dep. Ex. 11, attached as Ex. 2.)

19.    The quote noted a number of endorsements and exclusions, including the A&B Exclusion applicable to the Ridgewyck location, the A&B Sublimits, and

the Firearms Exclusion. (Poulton Dep. 73:2–13 & Dep. Ex. 11, p. 3, attached as Ex. 2.) Michael Poulton testified he would "[p]robably" have reviewed this quote along with the endorsements. (Poulton Dep. 72:11-25, 73:1–18, attached as Ex. 2.)

20.    A few hours later on the same day, Michael Poulton sent an email back to RT Specialty with a request to "bind coverage per [the] quote." (Poulton Dep. 79:25-82:10 & Dep. Ex. 12, attached as Ex. 2.)

21.    On August 8, 2016, RT Specialty emailed Poulton Insurance and attached a copy of the Policy and the endorsement stating that the A&B Exclusion applied to the Ridgewyck Apartments. (Henson Dep. 6:13-23, 9:3-24, 18:8-20:17, attached as Ex. 3.)

22.    Poulton Insurance received a copy of the Policy on August 8, 2016, and Michael Poulton considered himself Capital Growth's insurance agent at the time. (Poulton Dep. 89:24–90:23, 95:5–96:16, attached as Ex. 2.)

23.    It was Poulton Insurance's policy to send a copy of policy endorsements and exclusions to the insured. (Poulton Dep. 57:2–6, attached as Ex. 2.) It was also routine business practice to forward the complete policy to the insured when finalized. (Poulton Dep. 90:24-93:21, 96:8-16, attached as Ex. 2.)

24.    As Capital Growth's and PAM's insurance agent, Garry Gee would

have expected Poulton Insurance to have provided him with a copy of the Policy and its exclusions. (Gee Dep. 53:5–11, 58:7–11, attached as Ex. 1.)

## ARGUMENT

### I.    The A&B and Firearms Exclusions clearly excludes coverage for Mr. Sykes's underlying lawsuit.

"[A]n insurance policy is merely a contract between the insured and the insurer" and, accordingly, is construed like any other contract. *Mutual of Enumclaw Ins. Co. v. Ensign Traders, LLC*, No. 2:13-cv-00865, 2015 WL 1401693, at *3 (D. Utah March 26, 2015) (quoting *Vestin Mortg., Inc. v. First Am. Title Ins. Co.*, 139 P.3d 1055, 1057 (Utah 2006)).[2] The policy, if clear and unambiguous, must be "construed according to its usual and ordinary meaning." *Id.* (quoting *Alf v. State*

---

[2] Utah law applies in construing the Policy. "'In a diversity action,' including one seeking declaratory relief, '[the court] appl[ies] the substantive law of the forum state, including its choice of law rules.'" *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F. Supp. 2d 1226, 1229 (D. Utah 2013) (quoting *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005)). Utah uses the "most significant relationship" test in determining which state's law applies to a contract dispute. *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 14, 54 P.3d 1054. Under this test, courts examine "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the place of incorporation and place of business of the parties." *One Beacon Am. Ins. Co. v. Hunstman Polymers Corp.*, 2012 UT App 100, ¶ 28, 276 P.3d 1156 (ellipses and citation omitted). Here, both the place of contracting and the place of incorporation support the determination that Utah law applies.

*Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)). "[A]n 'insurer may include in a policy any number or kind of exceptions and limitations" to coverage as long as the exceptions are "clearly and unmistakably communicate[d] to the insured." *Id.* at *4 (first quoting *Farmers Ins. Exch. V. Call*, 712 P.2d 231, 233 (Utah 1985), then *Alf*, 850 P.2d at 1275). If the language is ambiguous, courts generally construe the insurance policy "in favor of the insured." *Fort Lane Vill., LLC v. Travelers Indem. Co. of Am.*, 805 F. Supp. 2d 1236, 1239 (D. Utah 2011). But if the language is clear, "no presumption in favor of coverage arises." *Id.*

Under these basic principles, the A&B and Firearms Exclusions unambiguously exclude coverage for Mr. Sykes's bodily injury claim.

### A.    The A&B Exclusion applies to exclude coverage because Mr. Sykes's injuries "aris[e] out of an[] assault, battery, fight, altercation, misconduct or similar incident or act of violence."

By endorsement to the Policy, the A&B exclusion applies to the Ridgewyck property and provides that the Policy "does not apply to" claims for bodily injury "arising out of any assault, battery, fight, altercation, misconduct or similar incident or act of violence." (*Supra* Undisputed Facts ¶ 9.) This is so even if the act of violence is "caused by or at the instigation of, or at the direction of the insured, … or any cause whatsoever, including, but not limited to claims of negligent or

improper hiring practices, negligent, improper or non-existent supervision of employees, patrons, or guests and negligence in failing to protect customers, patrons or guests." (*Id.*)

This language is broad and unambiguous. The Underlying Suit asserts claims for damages for bodily injury sustained in a gunfight—i.e., "an act of violence." (*Supra* Undisputed Facts ¶ 3.) Whatever the cause of that gunfight, and whatever theory of relief Mr. Sykes alleges in the Underlying Suit, the A&B Exclusion bars coverage. *See Mutual of Enumclaw*, 2015 WL 1401693, at *3–5.

**B.    The Firearms Exclusion also applies to exclude coverage because Mr. Sykes's injuries "aris[e] from the use of firearms."**

The Firearms Exclusion provides that the Policy "does not apply to" claims for bodily injury "arising from the use of firearms." By its plain language the exclusion bars coverage whether or not a firearm is used in connection with conduct that falls within the A&B Exclusion. (*Supra* Undisputed Facts ¶ 12.) Mr. Sykes was shot four times in an exchange of gunfire from firearms. (*Supra* Undisputed Facts ¶ 3.) Thus, the Firearms Exclusion clearly and unmistakably bars coverage for Mr. Sykes' claims. *See Mutual of Enumclaw*, 2015 WL 1401693, at *3–5.

## II.    If neither the A&B or Firearms Exclusions apply, then the A&B Sublimits Endorsement caps coverage at $50,000.

Should this court find that neither the A&B Exclusion or the Firearms Exclusion exclude coverages for the Underling Suit, the A&B Sublimits endorsement provides for reduced policy limits of $50,000 for any "occurrence" arising out of an "assault & battery hazard injury."[3] (*See supra* Undisputed Facts ¶ 11.) "Assault & battery hazard injury" is defined as "bodily injury, property damage, or personal and advertising injury due to the … failure to use reasonable force to protect persons or property; [f]ailure to prevent assault or battery; or [i]mproper or negligent hiring, employment, training or supervision." (Associated Am. Compl. Ex. 2, ECF No. 21-2, pp.114–15.)

In his Underlying Suit, Mr. Sykes is claiming such an "assault & battery hazard injury;" that is, he claims that Ridgewyck and its employees negligently failed to protect him from or prevent an assault and battery. (*Supra* Undisputed Facts ¶ 4.) In the event the Court disagrees with Associated that two other exclusions exclude coverage for Mr. Sykes' claims, *see supra* Part I, Associated requests that the Court

---

[3] As discussed *supra*, the A&B Exclusion applies only to Ridgewyck Apartments. The A&B Sublimits Endorsement applies to all other insured locations. Hence, the presence of both the A&B Exclusion and A&B Sublimits Endorsement creates no ambiguity in the coverage provided by the Policy.

declare that the A&B Sublimits endorsement limits coverage to $50,000 for Mr. Sykes' claims.

**III.    Defendants' affirmative defense that they never received notice of the Policy fails because Poulton Insurance's receipt of the Policy binds Defendants under agency law.**

Ridgewyck and PAM assert as their fourth affirmative defense that "Associated may not enforce exclusions since the [P]olicy and exclusions were not provided to [them] prior to loss." The defense fails because the undisputed testimony of both Garry Gee and Michael Poulton establish as a matter of law that Poulton Insurance was Capital Growth's agent authorized to, and did, receive the Policy on August 8, 2016, more than three months before the alleged gun fight. (*Supra* Undisputed Facts ¶¶ 1, 13, 19, 21.) Thus, Capital Growth and the other named insureds had constructive knowledge of the Policy and exclusions before the claim arose.

An agent can receive notice of a policy exclusion on behalf of a principal insured. *See Lane v. Provo Rehabilitation & Nursing*, 2018 UT App 10, ¶ 28, 414 P.3d 991; *see also* Restatement (Third) of Agency § 5.03 (Am. Law Inst. 2006) (stating that "notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the

principal").[4] The rule of imputed knowledge "is broad, encompassing all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority." *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 16, 61 P.3d 1009 (quotation simplified). Indeed, an agent's receipt of a policy exclusion is imputed to the insured even if the agent fails to inform the insured of the exclusion:

> [A] principal is affected with constructive knowledge, regardless of actual knowledge, of *all material facts* of which his agent receives notice or acquires knowledge while acting in the course and scope of his employment and within the scope of his authority, *although the agent does not in fact inform his principal thereof.*

*Lane*, 2018 UT App 10, ¶ 28. (alterations in original) (quoting *Wardley*, 2002 UT 99, ¶ 16). And the principal is charged with constructive knowledge in the same moment the agent receives the pertinent information on behalf of the principal. *See*

---

[4] This principle is subject to certain exceptions, none of which are applicable here. *See generally* Restatement (Second) of Agency § 5.03 (2006). Imputation does not apply when the agent "acts adversely to the principal as stated in § 5.04" and when the agent "is subject to a duty to another not to disclose the fact to the principal." *Id.* For purposes of Section 5.04, "notice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in the transaction or matter, intending to act solely for the agent's own purposes or those of another person." Restatement (Second) of Agency § 5.04 (2006).

*id.* ¶ 36 (concluding that knowledge of nurse's error was imputed to principal nursing facility "the moment it occurred").

So while Utah law requires an insurer to provide an insured the terms of an insurance policy in writing, *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 236 (Utah 1985); *see also General Motors Acceptance Corp v. Martinez*, 668 P.2d 498, 504 (Utah 1983) (holding that "an insurance company is estopped from relying upon an exclusion in a policy if the company has failed to deliver the policy or certificate of insurance to the insured or any other document stating the exclusion"), it also allows for an insurer to meet this requirement by delivering the policy to an agent, *see Wardley*, 2002 UT 99, ¶ 16; *Lane*, 2018 UT App 10, ¶ 28.

Numerous cases from other jurisdictions affirm this basic tenet of agency law. *See, e.g.*, *Gargano v. Liberty Intern. Underwriters, Inc.*, 572 F.3d 45, 50 (1st Cir. 1009) ("[An insured] cannot claim ignorance of the terms of policies that were delivered to his insurance agent or broker"); *Vinnie's Wholesale Fish Market, Inc. v. Canadian Marine Underwriters Ltd.*, 441 F. Supp. 341, 344 (D. Mass 1977) ("[I]t is established that delivery of a policy to a broker employed by the insured to procure that policy constitutes delivery to the insured."); *Wurster Const. Co., Inc. v. Essex Ins. Co.*, 918 N.E.2d 666, 681 (Ind. Ct. App. 2009) (holding that when a broker

accepted the terms of a policy on behalf of an insured, knowledge of terms of the policy could be imputed to the insured); *Lexington Ins. Co. v. Am. Healthcare Providers*, 621 N.E.2d 332, 340 (Ind. Ct. App. 1993) (holding that notice was sufficient when an insurer's agent sent a letter to an insured's agent outlining a policy's exclusions); *cf. Moore v. Prudential Ins. Co. of America*, 491 P.2d 227, 228-29 (Utah 1971) (holding that delivery of life insurance policy to insured's agent on July 21 and subsequent delivery to insured's family on July 24 was effective, even though insured had not received policy when the insured passed away on July 22 and observing that "there would be nothing unnatural or unfair in indulging the assumption that the deceased should be able to rely upon the agent . . . to whom he was looking to handle his insurance business, to receive the policy for him to hold until it could be delivered").

The undisputed testimony of both Garry Gee and Michael Poulton establish that Michael Poulton—as Capital Growth's agent—received the Policy on August 8, 2016, more than three months before the alleged gun fight. (*Supra* Undisputed Facts ¶¶ 1, 13-24.) Thus, Capital Growth and the other named insureds had constructive knowledge of the exclusions before the claim arose.

Both Michael Poulton and Garry Gee agree that Poulson Insurance acted as

an insurance agent for Capital Growth. Poulton Insurance was authorized to communicate on Capital Growth's behalf and also to bind coverage on Capital Growth's behalf. (*Supra* Undisputed Facts ¶¶ 14-17.) On June 30, 2016, Michael Poulton told RT Specialty to "bind coverage per [the] quote" that RT Specialty had just emailed containing the A&B Exclusion, the Firearms Exclusion, and the A&B Sublimits Endorsement. (*Supra* Undisputed Facts ¶¶ 18-22.) And on August 8, 2016, RT Specialty delivered the finalized Policy, including the exclusions, to Poulton Insurance. (*Supra* Undisputed Facts ¶ 19.)

It was Poulton Insurance's policy to send a copy of the finalized policy to the insured. Gerry Gee also testified his expectation was that Poulton Insurance would provide a copy of the Policy. (*Supra* Undisputed Facts ¶¶ 23-24.) But, ultimately, it does not matter whether Poulton Insurance forwarded a copy of the Policy — an agent's receipt of a policy is imputed to the insured even if the agent fails to inform the insured of the policy. *See Lane*, 2018 UT App 10, ¶ 28; *cf. Moore*, 491 P.2d at 228–29. Thus, knowledge of the terms of the Policy, including endorsements and exclusions, was imputed to Ridgewyck at least on Aug. 8, 2016. (*Supra* Undisputed Facts ¶ 19.) When Mr. Sykes sustained injuries three months later on November 16,

2016, the insured had knowledge of the terms of the Policy, including endorsements and exclusions.

**IV.    PAM, Inc. is not an insured under the Policy and is therefore not entitled a defense in the Underlying Suit nor to indemnification against any judgment entered against it in the Underlying Action.**

Pam, Inc. is a separate corporate entity from Capital Growth, the named insured under the Policy. Pam Inc. is not a named insured nor additional named insured under the Policy. (*Supra* Undisputed Facts ¶¶ 5, 6, 13, 14.) Consequently, Associated is not obligated to provide PAM, Inc. a defense in the Underlying Suit nor indemnify PAM, Inc. against any judgment entered against it in the Underlying Suit.

## CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, the Court should grant Associated's motion for summary judgment, and enter judgment declaring:

1. The A&B Exclusion excludes coverage for claims asserted in the Underlying Suit, and therefore Associated owes no duty to defend or indemnify Ridgewyck or PAM, Inc in the Underlying Suit.

2. The Firearms Exclusion excludes coverage for claims asserted in the Underlying Suit, and therefore Associated owes no duty to defend or indemnify Ridgewyck or PAM, Inc in the Underlying Suit.

3. Alternatively, the A&B Sublimits Endorsement applies to claims asserted in the Underlying Suit and caps coverage limits for claims asserted in the Underlying Suit to $50,000.00.

4. PAM, Inc. is not an insured under the Policy and Associated owes no duty to defend or indemnify PAM, Inc in the Underlying Suit.

5. For such other relief as the court deems just and proper.

DATED this 7th day of October, 2019.

KIPP AND CHRISTIAN, P.C.


/s/ Kirk G. Gibbs
KIRK G. GIBBS
JONATHAN M. BURT
*Attorneys for Plaintiff*

19