IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> RIDGEWYCK VENTRUES, LLC, dba RIDGEWYCK APARTMENTS; PROPERTY ASSET MANAGEMENT, INC.; and TRAVIS SYKES, an individual, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:18-cv-00138 <br><br> Chief Judge Robert J. Shelby <br><br> Chief Magistrate Judge Paul M. Warner |

This action for declaratory relief concerns a dispute about the interpretation of an insurance policy. Plaintiff Associated Industries Insurance Co. filed this Motion for Summary Judgment, asking the court to declare that it owes no duty to defend or indemnify Defendants Ridgewyck Ventures, LLC (Ridgewyck) and Property Asset Management, Inc. (PAM, Inc.) in an underlying action brought against Ridgewyck.[1] For the reasons explained below, Associated's Motion is GRANTED.

## BACKGROUND

Travis Sykes was a tenant of the Ridgewyck Apartments in Memphis, Tennessee.[2] The Ridgewyck Apartments were managed and operated by Defendants.[3] After an alleged gunfight at his apartment on November 16, 2016, Sykes filed a lawsuit against Defendants (the

---

[1] The Amended Complaint also lists Travis Sykes as a defendant. For all practical purposes, however, the dispute in this case is between Plaintiff Associated and Defendants Ridgewyck and PAM, Inc.; Sykes has not entered an appearance. Thus, any reference to "Defendants" is a reference to Ridgewyck and PAM, Inc.

[2] Dkt. 21-1 ¶ 6.

[3] Dkt. 21-1 ¶ 8.

Underlying Suit).[4]  In the Underlying Suit, Sykes alleges three masked individuals entered his apartment, he exchanged gunfire with the masked individuals, and he was shot four times.[5] Sykes seeks monetary damages from Defendants, alleging they negligently failed to protect him from "the foreseeable criminal assault perpetrated on him."[6]

Associated issued insurance policy number AES1035289 01 (the Policy) to Capital Growth Corporation, dba Property Management Assets, LLC, (Capital Growth).[7]  The Policy covered sixteen different properties—including the Ridgewyck Apartments—during the time period from July 1, 2016 to July 1, 2017.[8]  Ridgewyck is listed as an additional named insured under the Policy.[9]

The Policy's Insuring Agreement's general grant of coverage provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages for "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[10]

Relevant to this action, the Policy also contains several exclusions and sublimits.

First, the Policy contains an "Assault & Battery Hazard Sublimit" (A&B Sublimit), which provides in relevant part:

**A. Assault & Battery**

The insurance provided under SECTION I - COVERAGES COVERAGE A - BODILIY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE

---

[4] Dkt. 21-1 ¶¶ 1–2.

[5] Dkt. 21-1 ¶ 6.

[6] Dkt. 21-1 ¶¶ 27, 29.

[7] Dkt. 21-2 at 6.

[8] Dkt. 21-2 at 6.

[9] Dkt. 21-2 at 68, 70.

[10] Dkt. 21-2 at 22.

B - PERSONAL AND ADVERTISING INJURY LIABILITY LIMIT applies to any "occurrence" that the insured becomes legally obligated to pay because of an "assault & battery hazard injury," arising out of:

1. Actual or threatened assault or battery by anyone or any person;
2. Use and/or failure to use reasonable force to protect persons or property
3. Failure to prevent assault or battery; or
4. The negligent:
      a. Employment;
      b. Investigation
      c. Supervision
      d. Reporting to the proper authorities, or failure to so report; or
      e. Retention of a person for whom any insured is or ever was legally responsible and whose conduct is described in 1. above.
. . .

**D. The following is added to SECTION V- DEFINITIONS**

"Assault & battery hazard injury" means "bodily injury," "property damage," or "personal and advertising injury" due to the:

a. Use and/or failure to use reasonable force to protect persons or property;
b. Failure to prevent assault or battery; or
c. Improper or negligent hiring, employment, training or supervision of your "employees" involving a. or b. above.[11]

The A&B Sublimit applies to all sixteen properties and imposes both aggregate and "per occurrence" limits on what Associated will pay for damages resulting from "assault & battery hazard injury."[12]

Second, the Policy contains an "Assault and Battery" Exclusion (A&B Exclusion), which provides:

A. The following Exclusion is added to SECTION 1-COVERAGES, paragraph 2. Exclusions of COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph 2. Exclusions of COVERAGE B- PERSONAL AND ADVERTISING INJURY LIABILITY:

2. Exclusions

---

[11] Dkt 21-2 at 114.

[12] Dkt. 21-2 at 114–15.

This insurance does not apply to:

**Assault and Battery**

"Bodily injury," "property damage," or "personal and advertising injury" arising out of any assault, battery, fight, altercation, misconduct or similar incident or act of violence, whether caused by or at the instigation of, or at the direction of the insured, his/her employees, customers, patrons, guests or any cause whatsoever, including, but not limited to claims of negligent or improper hiring practices, negligent, improper or non-existent supervision of employees, patrons, or guests and negligence in failing to protect customers, patrons or guests.[13]

The A&B Exclusion applies only to the Ridgewyck Apartments.[14]

Finally, the Policy contains a "Firearms" Exclusion, which provides:

The following Exclusion is added to SECTION I - COVERAGES, paragraph 2. Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, and paragraph 2. Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY.

This insurance does not apply to:

**Firearms**

Any claim or "suit" for "bodily injury," "property damage," "personal and advertising injury" or medical payments arising from the use of firearms.[15]

The Firearms Exclusion applies to all sixteen properties.

## PROCEDURAL HISTORY

On November 9, 2018, Associated filed an Amended Complaint in this court, seeking a declaratory judgment that Associated owes no duty to defend or indemnify Defendants in the

---

[13] Dkt. 21-2 at 96.

[14] Dkt. 21-2 at 122.

[15] Dkt. 21-2 at 104.

Underlying Suit.[16]  On October 3, 2019, Defendants filed their Answer to the Amended

Complaint.[17]  And on October 7, 2019, Associated filed a Motion for Summary Judgment.[18]

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact" and the moving party is "entitled to judgment as matter of law."[19]  A fact is material if it

"might affect the outcome of the suit under the governing law," and a dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20]  Under

this standard, the court will "view the evidence and draw reasonable inferences therefrom in the

light most favorable to the nonmoving party."[21]

## ANALYSIS

In its Motion for Summary Judgment, Associated asks the court to enter judgment

declaring: (1) the A&B Exclusion excludes coverage and therefore Associated has no duty to

defend or indemnify Defendants; (2) the Firearms Exclusion excludes coverage and therefore

Associated has no duty to defend or indemnify Defendants; and (3) Associated owes no duty to

defend or indemnify PAM, Inc.[22]

## I. A&B EXCLUSION

Associated first asks the court to enter judgment declaring "[t]he A&B Exclusion

excludes coverage for claims in the Underlying Suit, and therefore Associated owes no duty to

---

[16] Dkt. 21.

[17] Dkt. 26.

[18] Dkt. 27.

[19] Fed. R. Civ. P. 56(a).

[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[21] *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2008) (citation omitted).

[22] Dkt. 27 at 18–19.

defend or indemnify Ridgewyck or PAM, Inc. in the Underlying Suit."[23]  In response, Defendants argue the Policy is ambiguous on this issue and therefore the court should construe the Policy in favor of coverage.[24]

Under Utah law, "[a]n insurance policy is merely a contract between the insured and the insurer."[25]  Accordingly, Utah courts interpret insurance policies as they do contracts.[26]

"The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract."[27]  "[I]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[28]  If an ambiguity exists, however, then any doubts are resolved against the insurer.[29]  "Whether an ambiguity exists in a contract is a question of law."[30]

Ambiguity in a contract may arise "(1) because of vague or ambiguous language in a particular provision or (2) because two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone."[31]  When faced with either form of ambiguity, "the policy must be construed in light of how the

---

[23] Dkt. 27 at 18.

[24] Dkt. 30 at 7.

[25] *Alf v. State Farm Fire & Casualty Co.*, 850 P.2d 1272, 1274 (Utah 1993).  The parties agree Utah law governs this action.

[26] *Benjamin v. Amica Mutual Ins. Co.*, 140 P.3d 1210, 1213 (Utah 2006).

[27] *WebBank v. American General Annuity Service Corp.*, 54 P.3d 1139, 1144 (Utah 2002).

[28] *Saleh v. Farmers Ins. Exch.*, 133 P.3d 428, 434 (Utah 2006).

[29] *Alf*, 850 P.2d at 1274.

[30] *Id.*

[31] *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 523 (Utah 1993).

average, reasonable purchaser of insurance would understand the language of the policy as a whole."[32]

Here, Defendants argue the Policy contains an ambiguity of the latter variety.  That is, the A&B Exclusion and A&B Sublimit—while each unambiguous when read alone[33]—give rise to inconsistent meanings when read together.

The A&B Sublimit explains the Policy's general grant of coverage covers "assault & battery hazard injury," and then proceeds to define that term to include "bodily injury . . . due to the . . . [f]ailure to prevent assault or battery."  In other words, while limiting the amount of coverage available for it, the A&B Sublimit explains the Policy covers bodily injury resulting from a failure to prevent assault or battery—the very injury Sykes alleges in the Underlying Suit.

The A&B Exclusion, on the other hand, states that "[t]his insurance does not apply to . . . bodily injury . . . arising out of any assault, battery, fight, altercation, misconduct or similar incident or act of violence . . . including . . . negligence in failing to protect customers, patrons or guests."  In other words, the A&B Exclusion excludes coverage for the injury complained of by Sykes in the Underlying Suit—but only as to the Ridgewyck Apartments.

Defendants argue these two sections create an irreconcilable conflict because the A&B Sublimit "extends coverage" for failure to prevent assault or battery on one hand while the A&B Exclusion "excludes coverage" on the other.[34]  Defendants urge the court to resolve this conflict

---

[32] *Id.*

[33] Defendants do not explicitly concede both are clear when read alone, but they do not argue either provision is ambiguous when read in isolation from the other.  And the court sees no ambiguity in the provisions on their own.

[34] Dkt. 30 at 9.

in their favor and extend coverage for these types of claims.[35]  Defendants further argue any

other result would render coverage under the Policy illusory.[36]

Associated responds that the A&B Exclusion and A&B Sublimit can easily be reconciled

because the A&B Sublimit is not a grant of coverage and therefore does not conflict with the

A&B Exclusion's exclusion of coverage.[37]  Associated further argues that, "even if this court

were to conclude the A&B Sublimit were a grant of coverage for assault and battery, the A&B

Exclusion would not render that coverage illusory because the A&B Exclusion only applies to

the Ridgewyck property."[38]  The court agrees with Associated.

As an initial matter, the court rejects Defendants' characterization of the A&B Sublimit

as a provision that "extends coverage" for assault and battery hazard injury.  As a general

liability policy, the Policy begins with the premise that the insurer will cover—within policy

limits—all sums the insured becomes liable to pay, subject to certain exceptions.  Indeed, the

Policy's general grant of coverage provides Associated will pay those sums Defendants become

legally obligated to pay as damages because of bodily injury (and property damage) caused by an

"occurrence."[39]  But the Policy also contains exceptions to this general grant of coverage, such

as the A&B Sublimit.  The A&B Sublimit serves not to expand or extend the scope of coverage

under the Policy, but rather to limit the scope of coverage under the Policy.  The A&B Sublimit

begins by explaining that, pursuant to the Policy's general grant of coverage for bodily injury

caused by an occurrence, the insured is covered for "assault and battery hazard injury," including

---

[35] Dkt. 30 at 10.

[36] Dkt. 30 at 10.

[37] Dkt. 38 at 8.

[38] Dkt. 38 at 9.

[39] The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Dkt. 21-2 at 35.

such injury arising out of "[f]ailure to prevent assault or battery."[40]  In other words, the A&B Sublimit does not itself provide the coverage for assault and battery hazard injury.  Rather, that coverage is born out of the Policy's general grant of coverage for bodily injury caused by an occurrence.  The A&B Sublimit then proceeds to explain that, while the insured is covered for assault and battery hazard injury, Associated will apply lowered limits of coverage for damages resulting from assault and battery hazard injury.  In short, the effect of the A&B Sublimit is not to extend coverage for assault and battery hazard injury, but rather to limit the insured's coverage for assault and battery hazard injury.[41]

With that understanding of the Policy in mind, the court now turns to determining whether the Policy is ambiguous.  In doing so, the court must ascertain how a reasonable purchaser of insurance would understand the language of the Policy as a whole.[42]  The court concludes a reasonable purchaser of insurance would understand the Policy to exclude coverage for assault and battery injury sustained at the Ridgewyck Apartments, and, therefore, the Policy is not ambiguous.

As explained above, the Policy is a general liability insurance contract, which begins with a general grant of coverage for wide-ranging injuries.  The exclusions and endorsements included in the Policy then act as a funnel to narrow the Policy's general grant of coverage in certain instances.  Relevant here, the A&B Sublimit narrows the Policy's general grant of coverage by imposing lower insurance limits on damages incurred as a result of assault and battery hazard injury.  The A&B Sublimit applies to all properties covered by the Policy and

---

[40] Dkt. 21-2 at 114.

[41] Or put differently, in the absence of the A&B Sublimit, the Policy would provide coverage for assault and battery hazard injury up to the Policy's generally applicable limits of insurance.  Thus, the only purpose the A&B Sublimit serves is to limit the scope of that coverage.

[42] *U.S. Fid. & Guar. Co.*, 854 P.2d at 523.

represents the first narrowing of coverage for injury related to assault and battery. The Policy's coverage is then narrowed a second time by the A&B Exclusion, which applies only to the Ridgewyck Apartments and excludes all coverage for injury resulting from assault and battery at that location.

A reasonable purchaser's understanding of the Policy can thus be summarized as follows: (1) the Policy generally provides coverage for bodily injury resulting from an occurrence; (2) to the extent such bodily injury is an assault and battery hazard injury, the A&B Sublimit imposes lower limits of coverage; and (3) to the extent a bodily injury caused by assault or battery is sustained at the Ridgewyck Apartments, the A&B Exclusion excludes coverage altogether.

Defendants nonetheless urge the court to read the A&B Sublimit and A&B Exclusion to create ambiguity in the Policy because both forms apply to the Ridgewyck Apartments, but they say different things—one alludes to coverage while the other excludes coverage.[43] As the Utah Supreme Court has explained, however, the fact that an "exclusion is inconsistent with the expected coverage" does not itself create an ambiguity because such "logic would prevent application of any exclusion since exclusions are necessarily inconsistent with coverage."[44] Indeed, insurers "may exclude from coverage certain losses by using 'language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided.'"[45] Thus, the Utah Supreme Court has "decline[d] to adopt a new definition of 'ambiguous' that would render an exclusion invalid simply because it conflicts with the stated coverage in some way."[46]

---

[43] Dkt. 30 at 10.

[44] *Alf*, 850 P.2d at 1275.

[45] *Id.* (citation omitted).

[46] *Id.*

The fact that the A&B Exclusion conflicts with the stated coverage in both the Policy's general grant of coverage and the A&B Sublimit does not render the Policy ambiguous. To conclude otherwise would be to render ambiguous most all general liability insurance policies that incorporate exclusions. Instead, a reasonable purchaser of insurance would understand the A&B Sublimit to act as a limit on the Policy's general grant of coverage and the A&B Exclusion to act as a further limit on that coverage, but only with respect to the Ridgewyck Apartments. Therefore, the Policy is not ambiguous by virtue of the A&B Exclusion conflicting with the stated coverage in the A&B Sublimit.[47]

Because the Policy is not ambiguous, the court will construe the Policy as written. And as written, the Policy unambiguously excludes coverage for bodily injury "arising out of any assault, battery, fight, [or] altercation . . . including . . . negligence in failing to protect customers, patrons or guests" at the Ridgewyck Apartments. Accordingly, the Policy excludes coverage for the injuries complained of in the Underlying Suit and, therefore, Associated has no duty to defend or indemnify Defendants in the Underlying Suit.

## II. FIREARMS EXCLUSION

### A. The Firearms Exclusion Applies

Associated next asks the court to enter a declaration that "[t]he Firearms Exclusion excludes coverage for claims asserted in the Underlying Suit, and therefore Associated owes no

---

[47] In a similar vein, the A&B Exclusion also does not render coverage under the Policy illusory. The Policy applies to sixteen different properties. Dkt. 21-2 at 68. The Policy's general grant of coverage and the A&B Sublimit apply to all sixteen properties. But only one property is subject to the A&B Exclusion—the Ridgewyck Apartments. Dkt. 21-2 at 122. Thus, the Policy still provides coverage against assault and battery hazard injury for fifteen properties—albeit at lower insurance limits. For that reason, coverage under the Policy is not illusory. *Cf. Harris v. Zurich Holding Co. of America, Inc.*, No. 2:05-cv-482, 2006 WL 120258, at *5–7 (D. Utah Jan. 17, 2006) (concluding stated coverage for malicious prosecution was illusory because "policy exclusions 'completely swallow[ed] up the insuring provisions'" (citation omitted)).

duty to defend or indemnify Ridgewyck or PAM, Inc. in the Underlying Suit."[48]  In response,

Defendants argue the Firearms Exclusion does not apply here because the theory of liability in

the Underlying Suit is failure to prevent assault or battery.[49]

As noted above, the Firearms Exclusion provides:

This insurance does not apply to:

**Firearms**

Any claim or "suit" for "bodily injury," "property damage," "personal and
advertising injury" or medical payments arising from the use of firearms.

Defendants argue the Firearms Exclusion does not preclude coverage because "Ridgewyck is

being sued not for the use of firearms, but rather for lack of security."[50]  In other words,

Defendants argue the court's analysis should focus not on the underlying cause of Sykes's

injuries, but rather the theory of liability espoused in the Underlying Suit.  The Utah Court of

Appeals, however, has rejected such an approach.  In fact, the Utah Court of Appeals has

adopted the opposite approach, holding that "when interpreting an exclusion based upon an

occurrence, event, or instrumentality, the focus is on the underlying cause of the injuries, and not

the theory of liability asserted by the complaining party."[51]

In *Taylor v. American Fire & Casualty Co.*, the insured parents were sued for negligently

supervising their minor child, who took the father's car without permission and caused an

accident resulting in bodily injury to the plaintiff.[52]  After obtaining a judgment, the plaintiff

---

[48] Dkt. 27 at 19.

[49] Dkt. 30 at 11–13.

[50] Dkt. 30 at 12.

[51] *Taylor v. Am. Fire & Cas. Co.*, 925 P.2d 1279, 1284 (Utah Ct. App. 1996).

[52] *Id.* at 1280.

sought recovery from the parents' insurer pursuant to the parents' homeowner's policy.[53]   The

insurer denied coverage, arguing a motor vehicle exclusion to the homeowner's policy excluded

coverage because the injuries arose out of the use of a motor vehicle.[54]   The trial court rejected

the insurer's argument, concluding the motor vehicle exclusion did not apply to the plaintiff's

cause of action for negligent supervision.[55]

      The Utah Court of Appeals reversed, holding that coverage was excluded pursuant to the

motor vehicle exclusion.   As the court explained:

> [W]here the negligent supervision is so inextricably intertwined with the motor
> vehicle, there is no independent nonauto-related act which would take the claim
> outside the scope of the motor vehicle exclusionary clause. Thus, negligent
> supervision claims are excluded from coverage where the acts complained of
> could not have resulted in injury but for the use of the automobile.[56]

The court held the plaintiff had not demonstrated the parents' negligent supervision "caused

injury independent from the use of the motor vehicle" and therefore the plaintiff's injuries were

excluded from coverage pursuant to the motor vehicle exclusion.[57]

      In doing so, the court rejected the plaintiff's contention that the court "should ignore the

underlying cause of [the plaintiff's] injuries, but instead focus exclusively on the theory of

recovery asserted in the complaint: negligent supervision and control."[58]   The court explained the

coverage (or non-coverage) under the motor vehicle exclusion turned not on the legal theory

---

[53] *Id.* at 1281.

[54] *Id.*  The motor vehicle exclusion, in relevant part, provided the homeowner's policy did not apply to bodily injury arising out of "(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured."  *Id.* at 1283.

[55] *Id.* at 1281.

[56] *Id.* at 1282–83.

[57] *Id.* at 1283.

[58] *Id.*

under which liability is asserted, but on the cause of the injury.[59]  In other words, the motor

vehicle exclusion did not delineate between injuries caused by the use of an automobile based on

certain legal theories (such as negligent supervision), but instead represented a blanket exclusion

for bodily injury resulting from the use of an automobile.  Thus, the court concluded, "when

interpreting an exclusion based upon an occurrence, event, or instrumentality, the focus is on the

underlying cause of the injuries, and not the theory of liability asserted by the complaining

party."[60]

In this case, the Firearms Exclusion represents a blanket exclusion for bodily injury

"arising from the use of firearms."  As such, the applicability of the Firearms Exclusion is not

conditioned on any underlying theory of liability.[61]  Instead, the applicability of the Firearms

Exclusion is conditioned only on the use of an instrumentality—firearms.  And because the

Firearms Exclusion is based upon an instrumentality, the court's "focus is on the underlying

cause of the injuries, and not the theory of liability asserted by the complaining party."

---

[59] *Id.*

[60] *Id.* at 1284.

[61] Defendants argue the Firearms Exclusion "make[s] clear that [a claim for] 'failure to protect' would not be subject to the exclusion'" because the Firearms Exclusion does not explicitly state it applies to claims for negligent failure to protect.  Dkt. 30 at 14.  The court disagrees.  Utah law instructs the court to strictly construe exclusions, giving them effect only when they use "language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."  *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999).  Here, the Firearms Exclusions clearly and unmistakably communicates that coverage will not be provided if the bodily injury complained of arises from the use of firearms.  While Associated certainly could have included language identifying specific theories of liability to which the Firearms Exclusion extends—as it did in the A&B Exclusion—the omission of such language does not create any carveout to the Firearms Exclusion based on the underlying theory of liability.

Here, the underlying cause of the injuries complained of in the Underlying Suit is the use of firearms.[62] And the Policy's Firearms Exclusion unambiguously excludes coverage for bodily injury "arising from the use of firearms." Furthermore, there is no non-firearms related injury alleged in the Underlying Suit that would take Sykes's claims outside the scope of the Firearms Exclusion. Therefore, under Utah law and pursuant to the Firearms Exclusion, Associated does not have a duty to defend or indemnify Defendants in the Underlying Suit.

### B. Associated Is Not Estopped from Invoking the Firearms Exclusion

Seeking to avoid the conclusion that the Firearms Exclusion excludes coverage for the claims in the Underlying Suit, Defendants argue Associated must be estopped from invoking the Firearms Exclusion because of representations Associated made to Defendants' insurance agents prior to entering into the Policy.[63] Specifically, Defendants argue Associated and its agents "made representations creating the belief that the firearms exclusion only extended to the use of firearms by security guards retained by Ridgewyck and would not apply to third parties."[64]

Under Utah law, "[e]stoppel may be applied to modify terms of an insurance policy when (1) an agent makes material misrepresentations to the prospective insured as to the scope of coverage or other important policy benefits, (2) the insured acts with prudence and in reasonable reliance on those misrepresentations, and (3) that reliance results in injury to the insured."[65]

---

[62] *See* dkt. 21-1 ¶ 1 ("Sykes was gravely wounded as a result of being shot at the Ridgewyck Apartments . . . ."); dkt. 21-1 ¶ 9 ("As a direct result of this incident, [Sykes] was transported to The Regional One Medical Center in critical condition, where he had to have surgery to stay alive after a bullet hit a main artery in his left arm."); dkt. 21-1 ¶ 17 ("Defendants breached their lawful duty of care and failed to provide adequate and reasonable security for their tenants and guests which resulted in the shooting and injuries suffered by Sykes."); dkt. 21-1 ¶ 29 ("[Sykes] seeks monetary damages from Defendants for the injuries sustained by [Sykes] because of the shooting . . . .").

[63] Dkt. 30 at 15–16.

[64] Dkt. 30 at 15.

[65] *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1094 (Utah 2007).

In support of their estoppel argument, Defendants' Opposition advances five additional material facts.[66]

The first additional material fact is Defendants' own response to one of Associated's interrogatories. In the response, Defendants state Associated inquired into whether the Ridgewyck Apartments had armed security guards, to which Ridgewyck's agent responded that it did.[67] Defendants then proceed to explain, "Ridgewyck's agent was advised that the firearms exclusion applied to security guards hired by the landlord."[68]

The second additional material fact is an excerpt from the deposition of Michael Poulton, Defendants' insurance agent. In the excerpt, Mr. Poulton is asked what his recollection is of the conversation he had with Associated's agents regarding the Firearms Exclusion.[69] Mr. Poulton responds that Associated's agents initiated the conversation and his "recollection is just that that topic pertained to armed security guards and their liability regarding firearms."[70]

The third additional material fact is a complaint Mr. Poulton filed with the Utah Insurance Commissioner. In that complaint, Mr. Poulton states, "[w]hen the broker/MGA discussed [the Firearms Exclusion] it was in the context of the insureds security staff and how they are not allowed to carry firearms."[71]

---

[66] Associated raises several objections regarding the admissibility of the additional material facts Defendants present in support of their argument that Associated is estopped from denying coverage. Dkt. 38 at 2–6. These objections appear to the court to be well-taken. The court need not resolve these objections, however, because the resolution of this issue does not depend on the admissibility of Defendants' proffered evidence. That is, even if the facts advanced in support of Defendants' argument were all admissible, the argument would still fail on the merits.

[67] Dkt. 30 at 4.

[68] Dkt. 30 at 4.

[69] Dkt. 30 at 5.

[70] Dkt. 30 at 5.

[71] Dkt. 30 at 5.

The fourth additional material fact is another excerpt from Mr. Poulton's deposition. In response to a question about whether he believed the Firearms Exclusion was specific to Ridgewyck Apartments, he replies, "I believe the firearm exclusion was specific, not to Ridgewyck, but to the armed security guards."[72]

And finally, the fifth additional material fact is an email from Steve Poulton, Michael Poulton's father, to Stacy Hargrove and Christopher Aikens.[73] In that email, Steve Poulton states, "[w]e were told in no uncertain terms that [the Firearms Exclusion] applied to security guards hired by the landlord."[74]

As explained above, Utah law requires a finding that the insured acted prudently and reasonably relied on the insurer's misrepresentations. Whether an insured reasonably relied on a misrepresentation is a question of fact.[75] Defendants, however, have not supplied the court with any facts or evidence suggesting Ridgewyck reasonably relied on any alleged misrepresentation made by Associated.[76] And in the absence of any evidence of reliance—let alone reasonable reliance—the court cannot find Ridgewyck reasonably relied on any alleged

---

[72] Dkt. 30 at 5.

[73] It is not immediately clear from the papers who Hargrove and Aikens are.

[74] Dkt. 30 at 15.

[75] *Youngblood*, 158 P.3d at 1096.

[76] Additionally, the court is not convinced any of Defendants' additional material facts contain any misrepresentations in the first instance. Indeed, the alleged representations—that the Firearms Exclusion applies to armed security guards—seem to fit squarely within the language of the Policy. At best, Defendants allege Associated only discussed one specific application of the Firearms Exclusion with Defendants, as opposed to discussing every potential application of the Firearms Exclusion. Indeed, the additional material facts do not allege Associated represented the Firearms Exclusion applied *only to security guards and no one else*—a representation that would constitute a misrepresentation under Utah law. *See Youngblood*, 158 P.3d at 1095 (holding insurer made a misrepresentation regarding scope of coverage when insurer's representation was "in direct conflict with the language of the policy").

misrepresentations.[77]  This is fatal to Ridgewyck's estoppel argument.  Accordingly, Associated is not estopped from relying on the Firearms Exclusion.

III. DUTY TO DEFEND

Having established the A&B Exclusion and Firearms Exclusion apply here, Defendants argue that, even if Associated has no duty to indemnify them in the Underlying Suit, it nonetheless has a duty to defend them.

An insurer's duty to defend arises solely under contract.[78]  Utah follows the "eight corners" rule to determine whether an insurer's duty to defend is triggered under an insurance policy.[79]  Under this rule, the court "examines the language of the policy and compare[s] it to the allegations made in the complaint to ascertain" whether an insurer has a duty to defend.[80]  The test under Utah law is "whether the complaint alleges a risk within the coverage of the policy."[81]  In other words, the court must determine whether the complaint "allege[s] claims that are covered by the terms of the [policy]."[82]  If the language found within the eight corners "clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete."[83]  It is the insurance company's burden to "demonstrate that none of the allegations

---

[77] At oral argument, Defendants' counsel acknowledged the only potential evidence of reliance in the record is the fact that Ridgewyck eventually purchased the Policy.  This is plainly insufficient to demonstrate reasonable reliance.

[78] *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 560 (Utah 2001).

[79] *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 737 (Utah 2011).

[80] *Id.*

[81] *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1214 (Utah 2006).

[82] *Id.*

[83] *Equine Assisted Growth*, 266 P.3d at 737.

of the underlying claim is potentially covered (or that a policy exclusion conclusively applies to exclude all potential for such coverage)."[84]

The Policy provides Associated will have a "duty to defend the insured against any 'suit'" seeking damages because of bodily injury or property damage to which the Policy applies.[85] The Policy, in turn, defines "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."[86] Therefore, Associated has a duty to defend Ridgewyck in a civil proceeding in which covered damages due to bodily injury or property damage are alleged.

Defendants argue Associated has a duty to defend all claims in the Underlying Suit because "in addition to the claims of personal injury resulting from the assault and shooting, Travis Sykes alleges that he suffered property damage due to lack of security by Ridgewyck Ventures."[87] The court disagrees.

Defendants' reading of the Sykes Complaint is overly broad. Defendants correctly observe that the Sykes Complaint makes a passing reference to an alleged burglary while Sykes was recovering in the hospital.[88] But as the Sykes Complaint makes clear, the alleged burglary took place days after the shooting.[89] That is, the alleged burglary is wholly unrelated to—and took place completely independent of—the November 16, 2016 shooting, which is the act that forms the basis for the Underlying Suit. And nothing in the Sykes Complaint suggests Sykes is

---

[84] *Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014) (citation omitted) (applying Utah law).

[85] Dkt. 21-2 at 22.

[86] Dkt. 21-2 at 35.

[87] Dkt. 30 at 7.

[88] *See* dkt. 21-1 ¶ 10.

[89] Dkt. 21-1 ¶ 10.

bringing a claim in the Underlying Suit for property damage resulting from the alleged burglary. Instead, as the Sykes Complaint makes clear, the Underlying Suit is an action "to recover damages for the personal injuries" suffered by Sykes as a result of the shooting.[90] Indeed, the single cause of action in the Sykes Complaint relates only to injuries sustained in the shooting.[91] And the damages sought in the Underlying Suit are "monetary damages from Defendants for the injuries sustained by Plaintiff *because of the shooting*."[92] Because the Underlying Suit does not involve a claim for property damage resulting from the alleged burglary, Associated has no duty to defend in the Underlying Action.

## IV. PAM, INC.

Finally, Associated asks the court to enter a declaration that "PAM, Inc. is not an insured under the Policy and Associated owes no duty to defend or indemnify PAM, Inc. in the Underlying Suit."[93] As Associated points out in its Motion, PAM, Inc. is a corporate entity separate from Capital Growth, the named insured under the Policy.[94] Furthermore, PAM, Inc. is not an additional named insured under the Policy.[95] Defendants do not respond to Associated's arguments in their Opposition. Because the Policy was not issued to PAM, Inc., and because PAM, Inc. is not an additional named insured under the Policy, the court concludes Associated has no duty to defend or indemnify PAM, Inc. in the Underlying Suit.

---

[90] Dkt. 21-1 ¶ 1. The Sykes Complaint is replete with references to the personal injuries suffered by Sykes. *See* dkt. 21-1 ¶ 4 ("This is a Complaint for personal injuries and damages . . . ."); dkt. 21-1 ¶ 17 ("Defendants breached their lawful duty of care and failed to provide adequate and reasonable security for their tenants and guests which resulted in the shooting and injuries suffered by Travis Sykes."); dkt. 21-1 ¶ 26 ("Defendants breached their duties of care to Plaintiff by failing to implement safety measures against the serious foreseeable personal injuries and damages he sustained.").

[91] *See* dkt. 21-1 ¶¶ 16–17, 24, 26–28.

[92] Dkt. 21-1 ¶ 29 (emphasis added).

[93] Dkt. 27 at 19.

[94] Dkt. 27 at 18.

[95] Dkt. 21-2 at 70.

**CONCLUSION**

In conclusion, both the A&B Exclusion and the Firearms Exclusion exclude coverage for the claims in the Underlying Suit.  Therefore, Associated has no duty to defend or indemnify Defendants for those claims.  Furthermore, because PAM, Inc. is not a named insured under the Policy, Defendants have no duty to defend or indemnify PAM, Inc. in the Underlying Suit. Accordingly, Associated's Motion[96] is GRANTED.

**SO ORDERED** this 4th day of March 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[96] Dkt. 27.